CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUN 0 8 2010

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| PARKSIDE VILLAGE, LLC, ) | |
| ) | Civil Action No. 5:10cv00008 |
| Appellant, ) | Bankruptcy Case No.09-50909RKR |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| UNITED BANK, ) | By: Samuel G. Wilson |
| ) | United States District Judge |
| Appellee. ) | |

This is an appeal by the Chapter 11 debtor, Parkside Village, LLC ("Parkside"), pursuant to 28 U.S.C. § 158 from the decision of the bankruptcy court finding that Parkside's secured construction lender, United Bank ("the Bank"),[1] had an allowable claim and lifting the automatic stay. Parkside had objected to the Bank's proof of claim on the ground that the construction loan agreement was unenforceable and that the Bank had no right to repayment because the Bank had materially breached the agreement in two ways: (1) by failing to disburse funds timely and (2) by repudiating its obligation to fund any further draw requests under its loan commitment. The bankruptcy court held that because the construction loan agreement contained no particular provision concerning the timing of loan disbursements Parkside could not assert the timing of disbursements as a breach of the loan agreement, and it held that the additional funds Parkside was seeking were for marketing purposes which were not contemplated by the loan agreement. Consequently, the bankruptcy court denied Parkside's objection and allowed the Bank's claim. This court affirms, albeit on grounds that differ from those offered by the bankruptcy court.

---

[1] The original agreement was between Parkside and Marathon Bank. Marathon Bank merged with United in 2007, and the joint entity is now known as United Bank. For simplicity's sake, the court will refer only to the Bank.

# I.

The bankruptcy court held an evidentiary hearing before entering its decision, and the parties now agree that the facts are not in dispute. Parkside and the Bank entered into a loan agreement in July of 2006 for the purpose of financing the construction of a multi-phase, multi-unit residential townhouse development (the "Project"). The Bank agreed to loan Parkside $1,850,000 for twenty-four months secured by a deed of trust to finance the first phase of the project consisting of site improvements and the first building containing six "town homes." After deducting fees and expenses associated with the loan, the actual amount of funding available to Parkside to complete the first phase of the Project was $1,668,450 – $720,000 for construction costs and $948,450 for overhead and site work. (Bankr Ct. op. at 2.) The loan agreement provided that loan proceeds were "to be used for the payment of material, bills, labor, and for other uses and purposes in and for the construction" of the Project (Ex. 4), and it called for the Bank to make proceeds available to Parkside upon request as construction progressed under a schedule.

With the exception of carpeting and "tap fees," the first phase of construction was completed in July of 2007. The Bank honored all draw requests until January 25, 2008, when Parkside requested $180,000. The Bank disbursed $140,000 of the requested amount, and $39,600 of the remainder in September 2008. When it disbursed the $140,000 it informed Parkside that it would not honor any further requests for funds. According to Parkside, this left approximately $177,000 undisbursed and amounted to an anticipatory breach of the construction loan agreement. (Dist. Ct. Hearing April 7, 2010.) Parkside's agent, Randy Carter, testified in the bankruptcy court that, although the first phase of the project was complete, he had expended

his "personal funds" to finish the construction. Carter testified that he had intended to use the remaining undisbursed loan funds to replace the money he had personally advanced for the Project, and then use those funds for advertising purposes. (Bankr. Tr. 28.)

Parkside filed a bankruptcy petition under Chapter 11, the Bank filed its proof of claim, and Parkside objected on the ground that the Bank had materially breached its loan agreement in delaying payment of its January 25, 2008, draw request and repudiating its obligation to fund any further request. According to Parkside, in Virginia the first party to breach a loan agreement is barred from enforcing its rights under that agreement – here, repayment of the loan. The bankruptcy court held Parkside could not assert a delay in funding a draw request as a breach of the loan agreement because the loan agreement contained no particular provision concerning the timing of loan disbursements, and it also held that Parkside was not entitled to loan proceeds for marketing purposes. Consequently, it denied Parkside's objection and lifted the automatic stay.

## II.

Parkside contends that the bankruptcy court erred in holding that the Bank did not breach the loan agreement when it delayed completely funding Parkside's January 25, 2008, draw request on the ground that the agreement established no particular time for disbursements. According to Parkside, when a contract is silent as to the time within which an act is to be performed the law implies a reasonable time. This court agrees. However, this court is not limited to evaluation of the grounds offered by the bankruptcy court to support its decision, but may affirm on any ground apparent from the record. See Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008) (citing United States v. Smith, 395 F.3d 516, 518-19 (4th Cir. 2005) ("We are not limited to evaluation of the grounds offered by the district court to support its decision, but may

3

affirm on any ground apparent from the record.")). Here, assuming, but in no way deciding, that the Bank unreasonably delayed its final $39,600 payment, and thereby breached its agreement, that breach was in no way material. Accordingly, this court affirms the bankruptcy court on that alternative ground.

In Virginia, "when a contract is silent as to the time within which an act is to be performed, the law implies a reasonable time, and what constitutes a reasonable time is generally an issue to be decided by a [fact finder]." Grossman v. Sanders, 376 S.E.2d, 66, 70 (Va. 1989) (citing Merriman v. Cover, 51 S.E. 817, 821 (Va. 1905); Duke v. Norfolk & W. Ry. Co., 55 S.E. 548, 549 (Va. 1906)). Consequently, the Bank had an obligation to disburse the funds in a reasonable time. The court assumes that the Bank failed to do so, but nevertheless concludes that the alleged breach was not material and does not preclude it from enforcing the contract.

Under Virginia law "[t]he party who commits the first breach of a contract is not entitled to enforce it, or to maintain an action thereon, against the other party for his subsequent failure to perform." Spotsylvania Sch. Bd. v. Seaboard Surety Co., 415 S.E.2d 120, 127 (Va. 1992) (quoting Hurley v. Bennett, 176 S.E. 171, 175 (Va. 1934)). Only a material breach, however, precludes an action on the contract by the breaching party. A "material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." See Horton v. Horton, 487 S.E.2d 200, 203 (Va. 1997). If the breach does not go to the "root of the contract," then the "first breach" rule is inapplicable and the breaching party may enforce the contract. Neely v. White, 14 S.E.2d 337, 340 (Va. 1941). As of January 25, 2008, the first phase of the Project was complete and the Bank, according to Parkside's own calculations, had honored draw requests totaling not less than $1,399,350.

4

Parkside has not shown that the Bank's delay in disbursing the final $39,600 constituted a material breach, that is, a failure to perform that was so fundamental to the bank's obligation that it defeated an "essential purpose of the contract." Horton, 47 S.E.2d at 204. See e.g. Israel v. Nat'l Canada Corp., 658 N.E.2d 1184 (Ill. App. Ct. 1995) (no evidence that delay in construction loan funding damaged borrower or otherwise constituted a material breach). Consequently, this court affirms the bankruptcy court on this issue on this alternative ground.

## III.

According to Parkside, the Bank also committed a material, anticipatory breach when the Bank indicated in January 2008 that it would fund no further draw requests. Parkside contends that, as a consequence, the "first to breach" rule precludes the Bank from enforcing its loan agreement. It follows, according to Parkside, that the bankruptcy court erred when it denied Parkside's objection to the Bank's proof of claim. This court concludes otherwise and affirms.

Parkside's agent, Randy Carter, testified in the bankruptcy court that, although Parkside had completed the first phase of the project, he had expended his "personal funds" for construction, and that he had intended to use the undisbursed loan money to reimburse himself and for advertising purposes. (Bankr. Tr. 28.) The bankruptcy court found that the loan agreement did not entitle Parkside to any additional funds after completion of the first phase until it was "completely sold" and that there was no budget in the first phase for "marketing expenses." (Bankr. Ct. op. at 8.) In fact, as the bankruptcy court noted, the loan agreement expressly provides that its proceeds were "to be used for the payment of material, bills, labor, and for other uses and purposes in and for the construction" of the Project. (Ex. 4.) Therefore, the bankruptcy court's factual findings that the funds were for marketing purposes and that the

5

payment of marketing expenses was not provided for in the loan agreement are unassailable. The court also notes that there is nothing in the loan agreement that would require the Bank to reimburse Carter for his expenditure of his "personal funds" on the project. Accordingly, this court affirms the bankruptcy court on this issue.

## IV.

For the foregoing reasons, the bankruptcy court's final decision allowing the Bank's claim, overruling Parkside's objections to that claim, and lifting the automatic stay, is **AFFIRMED**.

**ENTER**: This 8th day of June, 2010.

_____
UNITED STATES DISTRICT JUDGE